RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WHITE OAK PROPERTY DEVELOPMENT, LLC,
                *Plaintiff-Appellant,*

      *v.*

WASHINGTON TOWNSHIP, OHIO;
WASHINGTON TOWNSHIP, OHIO, TRUSTEES;
JANIE WILLS; and ALAN HANSELMAN,
                *Defendants-Appellees.*

No. 09-3527

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00595—Michael R. Barrett, District Judge.

Argued: April 30, 2010

Decided and Filed: June 4, 2010

Before: GIBBONS and GRIFFIN, Circuit Judges; DOWD, Senior District Judge.[*]

_____

## COUNSEL

**ARGUED:** Gregory B. O'Connor, McNAMEE & McNAMEE, PLL, Beavercreek, Ohio, for Appellant. Brendan D. Healy, SURDYK, DOWD & TURNER CO., L.P.A., Miamisburg, Ohio, for Appellees. **ON BRIEF:** Gregory B. O'Connor, Michael P. McNamee, McNAMEE & McNAMEE, PLL, Beavercreek, Ohio, for Appellant. Brendan D. Healy, Robert J. Surdyk, SURDYK, DOWD & TURNER CO., L.P.A., Miamisburg, Ohio, for Appellees.

---

    [*]The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1

————————————

**OPINION**

————————————

GRIFFIN, Circuit Judge.   Plaintiff White Oak Property Development, LLC ("White Oak") appeals the district court's grant of summary judgment in favor of defendant Washington Township and its trustees ("Township").   White Oak claims that various zoning regulations are unconstitutionally vague, violate the anti-discrimination provisions of the Fair Housing Act and the Equal Protection Clause of the Fourteenth Amendment, run contrary to White Oak's alleged property interests protected by substantive due process, and were enacted as part of a conspiracy by Township officials to deprive White Oak of its procedural due process rights.   We disagree and affirm.

I.

The district court accurately set forth the relevant facts:

Plaintiff White Oak Property Development, LLC is the owner of a 60-acre tract of land ("Property") in Washington Township ("Township"), which is surrounded by a separate 160-acre tract of land that includes an 18-hole golf course ("Golf Course").   White Oak acquired the Property and the Golf Course from the previous owner, Donald Schroer.[1]   Schroer had negotiated a Tax Increment Financing agreement ("TIF Agreement") with Township officials which would have allowed him to construct approximately 94 residences on the Property.

————————————————————————————

[1] Defendants point out that the sales transaction was actually between a third-party, White Oak Golf Enterprises, LLC, and Play-A-Round, LLC.   Ownership of the Property was not transferred to White Oak until June 28, 2007.

————————————————————————————

The Washington Township Zoning Resolution sets forth four districts: (1) Agricultural; (2) Residential; (3) Commercial; (4) Industrial.   The Property is zoned Residential "R" District.   The Zoning Resolution describes this type of property as follows:

Section 2.  RESIDENTIAL "R" DISTRICT

    A.    PERMITTED USES

        1.    One (1) Single Family Dwelling subject to lot size requirements, dwelling size requirements, and all other requirements as set forth herein.

        2.    Home occupations.

        3.    Storage and or/salvage [sic] of no more than two (2) vehicles that re [sic] unlicensed, disabled, outside of an enclosed building, and visible from the road or from adjacent residential dwellings. Farm Machinery is excluded.

        4.    Accessory buildings and uses customarily incident to any of the above permitted uses.

    B.    USES PROHIBITED

        1.    Any other use not specifically permitted in this section.

On March 15, 2007, White Oak delivered a development plan to the Washington Township Planning Commission which proposed a residential condominium development on the Property ("the Proposal"). The Proposal called for a Planned Unit Development ("PUD") and included 280 to 300 multi-family units. At 300 units, the Proposal equated to a density of five units per acre. The prices of the units would start in the low $200,000 range.

On March 26, 2007, White Oak presented the Proposal to the Washington Township Trustees during a regular meeting. Defendants Janie Wills and Alan Hanselman were both Trustees at the time. Wills asked whether the development was going to be "Section 8 or low income housing."

On March 28, 2007, White Oak presented the Proposal to the Washington Township Zoning Commission. Danny Bolend[e]r, the Chairman of the Zoning Commission, drafted and distributed a letter to residents claiming that the Zoning Commission had recommended denial of the development, and that the residents should urge the Trustees to deny it as well. Bolender specifically distributed the letter to those residents living directly adjacent to the Property, on Wardlow Road and Shroufe Road in Washington Township. Bolender himself owns property on Wardlow Road.

In a letter dated May 7, 2007, the Trustees and the Zoning Commission denied the Proposal. The denial was based on the Intensity of Use provision in the Zoning Resolution, which states:

SECTION 5. INTENSITY OF USE

    LOT SIZE

        –        Every lot districted as Commercial or Industrial shall have a minimum of three (3) acres.

        –        Every lot districted as Residential shall have a minimum of three (3) acres if the dwelling is connected to an on-site sewage disposal system, or a minimum of one (1) acre if the dwelling is connected to a public sanitary sewer system.

The letter states: "[s]ince your proposed development plan does not conform to the Washington Township Zoning Regulations, it cannot be approved as it is now set forth. If you wish to submit a revised plan that does not violate the Washington Township Zoning Regulations, please do so."

On May 21, 2007, White Oak attended another Trustee meeting and protested the denial. White Oak challenged the Defendants' interpretation of the Zoning Resolution, arguing that the Intensity of Use provision did not support Defendants' denial of the proposed development. White Oak argued that the Intensity of Use provision does not prohibit multi-unit dwellings, as long as each dwelling sits on one or three acres, depending on its sewer. White Oak pointed out that [the] definition of "dwelling" in the Zoning Resolution includes multiple family dwellings:

DWELLING – Any structure, or portion thereof occupied or intended to be occupied exclusively for residential purposes.

        – SINGLE FAMILY DWELLING – A detached, independently standing structure occupied or intended to be occupied exclusively for residential purposes by one (1) family or housekeeping unit.

        – MULTIPLE FAMILY DWELLING – A detached, independently standing structure occupied or intended to be occupied exclusively for residential purposes by more than one (1) family or housekeeping unit.

As such, White Oak argued that the Intensity of Use provision imposes no limitations on the number of units that can be included in a dwelling.

On June 11, 2007, the Trustees held another meeting. During the meeting the Trustees voted to close Shroufe Road "from the Luke property on back." This action would effectively eliminate access to the Property because Shroufe Road dead-ends into the Property, and the "Luke property" is the last property before the Property on Shroufe Road.

On June 25, 2007, the Trustees voted to pass Resolution 13-2007, which asks the Brown County Commissioners to vacate Shroufe Road at the 1,438 mark. The Brown County Commissioners subsequently denied the request.

On July 23, 2007, the Trustees voted to rescind the TIF Agreement. The vote came following a motion by Bolend[e]r, who was in the audience. Defendants maintain that the TIF Agreement was rescinded because the original developer was required to provide the Township with an unconditional, irrevocable letter of credit, but no letter of credit was ever issued. White Oak maintains that Bolend[e]r met secretly with Wills and Hanselman and discussed rescinding the TIF. Wills and Hanselman deny that these meetings took place.

White Oak brings its claims pursuant to 42 U.S.C. § 1983, the Fair Housing Act, § 801 *et seq*., 42 U.S.C.A. § 3601 *et seq*., and Ohio law. White Oak claims: (1) the Zoning Resolution is unconstitutional on its face; (2) Defendants have violated the Fair Housing Act; (3) Defendants violated its substantive and procedural due process rights; (4) the Township has violated Ohio law by acting outside its statutory authority; (5) Defendants engaged in a civil conspiracy in violation of Ohio and federal law; (6) Wills and Hanselman have publicized matters which place White Oak in a false light; and (7) Wills and Hanselman have defamed White Oak. White Oak also seeks a declaration that the Zoning Resolution is unconstitutional on its face.

Subsequently, the parties filed a Stipulation of Partial Dismissal of Claims in which the parties dismissed White Oak's claims for false light invasion of privacy and defamation without prejudice.

(Internal citations omitted.)

On April 7, 2009, the district court granted the Township's motions for judgment on the pleadings and summary judgment, treating the motion for judgment on the pleadings as one for summary judgment because the district court considered matters outside the pleadings. *See* FED. R. CIV. P. 12(d). In so doing, the district court dismissed all of White Oak's claims with prejudice, except for its state law claims alleging civil

conspiracy and a violation of Ohio Revised Code § 519.02.  The district court declined to exercise supplemental jurisdiction over these state law claims and dismissed them without prejudice.  White Oak timely appeals.

## II.

We review de novo a district court's grant of summary judgment.  *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009).  Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The moving party has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether the movant has met this burden, we must view the evidence in the light most favorable to the nonmoving party.  *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

## III.

White Oak argues that the Zoning Resolution is facially vague in both substance and procedure.

In *Association of Cleveland Firefighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007), we set forth the applicable law governing vagueness challenges:

> We have recognized that the vagueness doctrine has two primary goals: (1) to ensure fair notice to the citizenry and (2) to provide standards for enforcement [by officials].  With respect to the first goal, the Supreme Court has stated that "[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."  *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1925).  With respect to the second goal, the Supreme Court stated that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to

[officials] for resolution on an ad hoc and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

*Id*. at 551 (first and third internal citations omitted).

### A.

White Oak asserts that the Zoning Resolution allows it to build multiple family dwellings on its residential property and, alternatively, that the applicable provisions are vague. According to White Oak, Article V, Section 2(A)(1)'s limitation on dwellings in a residential district to "Single Family Dwelling[s]" conflicts with the "Definitions" section of Article III. That section defines "dwelling" generally, then subdivides the term into "single family dwelling" and "multiple family dwelling[,]" providing definitions for each.

White Oak's reliance upon Article III's general definitions as authorization to construct multiple family dwellings is misplaced. The more specific and relevant "Permitted Uses" in Article V, Section 2(A)(1) unambiguously restricts dwellings in a residential district to those that are "Single Family Dwelling[s][.]" We need not settle for the well-known canon of statutory construction *expressio unius est exclusio alterius* ("the mention of one thing implies the exclusion of another") to infer that multiple family dwellings are prohibited because Section 2(B) of Article V says so expressly – it "prohibit[s] . . . [a]ny other use not specifically permitted in this section."

Even assuming that the "Definitions" section has some relevance, it fails to support White Oak's interpretation. The definition for "dwelling" does not indicate that the term should be understood to encompass both single and multiple family dwellings each time the word "dwelling" appears generally in the Zoning Resolution. In fact, Article V, Section 2(A)(1) illustrates the fallacy of such a reading. In that provision, the terms "Single Family Dwelling" and "dwelling" appear in a single phrase, and "dwelling" clearly refers to "Single Family Dwelling" only:

### A.     PERMITTED USES

> 1.      One (1) *Single Family Dwelling* subject to lot size
>         requirements, *dwelling* size requirements, and all other
>         requirements as set forth herein.

(Emphasis added.)

White Oak's reliance upon the "Intensity of Use" in Article IV, Section 5(A) is likewise erroneous. That section sets forth different acreage requirements for lots supporting "dwelling[s]." Specifically, each lot housing a dwelling "connected to an on-site sewage disposal system" must have a minimum of three acres, and each lot housing a dwelling "connected to a public sanitary sewer system" must have a minium of one acre per lot. Although the general term "dwelling" appears in this clause, and "dwelling" is not expressly delimited to "Single Family Dwelling[,]" it is apparent that its purpose is to prescribe the minimum *acreage* for each lot containing a "dwelling[,]" not to specify the *type(s)* of dwellings (single and/or multiple family) permitted on each lot. Indeed, the provision revealingly falls beneath the sub-heading "Lot Size[.]" While the "Definitions" and "Intensity of Use" provisions are certainly not models of clarity ("multiple family dwelling" could be deleted from the "Definitions[,]" and "dwelling" could more accurately be replaced with "single family dwelling" in the "Intensity of Use"/"Lot Size" requirements), the Constitution's "prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975).

White Oak's additional argument that the Zoning District Regulations are vague because they allegedly permit construction of only one single family dwelling in a residential district is unavailing. White Oak's interpretation would produce an absurd result – a cap at one single family dwelling in an entire residential district. When the "Permitted Uses" limitation is read in conjunction with the "Intensity of Use"/"Lot Size" requirements, a harmonious construction devoid of vagueness is achieved.

B.

White Oak also argues that the Zoning Resolution's procedures for obtaining approval to construct a new dwelling are vague. Its complaints concern the processes for obtaining a "Zoning Construction Certificate" and submitting an "application for Development[.]" The Zoning Resolution requires a Zoning Construction Certificate for "all new dwellings[,]" and the procedure for obtaining this certificate is as follows:

1.    Applications for Zoning Construction Certificates are obtained from the Zoning Inspector or his designee.

2.    Every application shall be accompanied by a sketch or drawing indicating the location of all buildings and structures to be erected in relation to all property lines, street lines and right-of-ways. For applications involving dwellings, the sketch or drawing must also indicate the location of flood plains.

3.    Every application shall include the proper sewer or septic permit, as applicable, and that permit will be verified by the Zoning Inspector with the appropriate agency.

4.    Within ten (10) days after receipt of an application, the Zoning Inspector shall either approve or disapprove the application in conformance with the provisions of this Resolution.

* * *

6.    Zoning Construction Certificates shall be issued only in conformity with the provisions of this Resolution unless the Zoning Inspector receives written order from the Board of Zoning Appeals deciding an appeal, conditional use or variance.

Regarding Developments, the Zoning Resolution provides, in full:

**G.    DEVELOPMENTS**

Commencing with the effective date of this amendment, Land divided from the Original Lot of Record into three or more lots for the development of dwellings will be considered a Development.

– A Development must be platted (accurate site layout or "paper survey") before an application for Development is filed with the Zoning Inspector.

> – If the Board of Trustees approves the application for Development, the Development (as defined in the application) may proceed.
>
> – The lots (per the application) must be surveyed and recorded, and the comparison of the recorded lots with those described in the application approved by the Board of Trustees, prior to zoning certificates or zoning redistrict changes being issued or approved.
>
> – If there are declared roads in the application, then those roads must be built (to minimum County standards for public transportation) and their construction approved by the Board of Trustees prior to zoning certificates or zoning district changes being issued or approved for the lots fronting those roads.

According to White Oak, the Zoning Construction Certificate process is vague because it "contains no guidance as to *when* in the development process the zoning construction certificate applies" and does not specify whether the zoning inspector or the property owner must apply for the certificate. (Emphasis in original.) The provisions addressing the "application for Development" are also allegedly vague because they do not "identify the content or timing of any such application[,]" "the Zoning Resolution makes no other reference to any such application[,]" and "[t]here is also no attempt to correlate the 'application for Development' with the 'zoning construction certificate.'"

Ironically, White Oak's vagueness challenge to these procedures is nebulous in itself. White Oak's discussion is perfunctory, and we hold that the issue is forfeited. *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ("We have cautioned that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived, and that it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and internal quotation marks omitted).

In any event, while the procedures may not qualify as standards for precision, they are not constitutionally infirm. Significantly, the applicant has fair notice of, and need not speculate about, whether his proposed development will be approved before he

begins construction and makes significant expenditures. Although imperfect, the procedures sufficiently detail the requirements, process, and timing for obtaining approval of a plan of construction.

## C.

White Oak argues that the density, Zoning Construction Certificate, and application for Development procedures are void for vagueness because they permit "arbitrary and unbridled discretion[ary]" enforcement. This argument is without merit.

The heart of White Oak's argument is its refrain, already rejected, that the Township's denial of its proposed multi-family housing development was arbitrary. However, we agree with the district court that "[t]he limit of one single family dwelling is objective and does not permit ad hoc, discriminatory enforcement of the Zoning Resolution."

Moreover, the Township's officials do not have unbridled discretion in the enforcement of the challenged zoning laws. As already discussed, the provisions relating to the Zoning Construction Certificate and the Development section are not unconstitutionally vague. Those provisions mandate that the zoning inspector grant or deny a Zoning Construction Certificate "[w]ithin ten (10) days after receipt of an application[,]" and the inspector's decision must be "in conformance with the provisions of this Resolution." Apart from its amorphous allegations, White Oak fails to explain adequately how the challenged provisions permit arbitrary and discriminatory enforcement. Accordingly, White Oak's attempt to void the Zoning Resolution, or portions thereof, for vagueness fails.

## IV.

Next, White Oak argues that the Township rejected its proposed development for unlawful, discriminatory reasons, in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. ("FHA"). According to White Oak, Trustee Wills's inquiry at the March 26, 2007, trustees meeting, in which she asked whether the proposed development would be

"Section 8 or low income housing[,]" and Trustee Dotson's deposition testimony characterizing the community's concerns about subsidized housing within the proposed development as "a big issue" demonstrate unlawful discrimination based upon income or race.

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, . . . because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). As an initial observation, we note White Oak's lack of evidence and implausible argument that condominium units starting in the low $200,000 range qualify as low-income housing. Even if the development transitioned to low-income or subsidized housing after construction, the plain language of the FHA does not prevent discrimination based on "low income," and White Oak cites no authority that says otherwise.[1]

To clear this hurdle, White Oak recasts its argument as a race-based allegation, arguing that a prohibition against low-income housing would have a disproportionately adverse impact on minority groups. It asserts that "[t]his Court has recognized the racial impact of preventing low income or public housing[,]" relying upon *United States v. City of Parma*, 661 F.2d 562 (6th Cir. 1981). In *City of Parma*, we affirmed the district court's ruling that the housing practices within a Cleveland suburb ran afoul of the FHA because "a series of actions [by the City of Parma] . . . had both the purpose and effect of maintaining Parma as a virtually all-white community" within metropolitan Cleveland, an area where "[a]n extreme condition of racial segregation exists." *Id*. at 565 (citations and internal quotation marks omitted). However, the evidence of record in *City of Parma* – absent in the present case – demonstrated a pervasive pattern and practice of racial discrimination in housing decisions by Parma officials, including: Parma's "small fraction of one per cent" Black population compared to the 16% Black

---

[1]Wills and Dotson dispute White Oak's allegation that the trustees rejected its proposed development for income-based reasons. Wills testified in her deposition that she merely sought clarification from White Oak about whether it intended to construct low-income housing because township residents had inquired; Wills herself was not concerned about it. Dotson stated in his deposition that he did not "have a problem" with low-income housing.

population in the Cleveland metropolitan area, Parma's reputation for hostility toward Blacks, "statements of elected officials of Parma which were either overtly racist or were found to have racist meanings[,]" and a history of challenged housing decisions, all of which were "based on a desire to keep minorities out of the community and . . . had an acute and foreseeable segregative effect on this virtually all-white city." *Id*. at 566-67 (citation and internal quotation marks omitted).

In stark contrast to *City of Parma*, there is no evidence in the present case suggesting an unlawful discriminatory intent or impact on the basis of race. Washington Township is a rural area. White Oak has presented no evidence about the minority population in or near Washington Township and, more specifically, about the possible impact the prohibition on multi-family dwellings would have on minority populations in the Township. White Oak assumes, without any evidentiary support, that minorities will be adversely affected.

For these reasons, we hold that the district court properly granted summary judgment to the Township on White Oak's FHA claim.

V.

White Oak argues additionally that the Zoning Resolution's blanket prohibition on multi-family housing violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. It relies upon the Supreme Court's decision in *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977) and the district court's ruling in *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526 (N.D. Tex. 2000). White Oak's reliance on both cases is misplaced. Neither case holds that a prohibition against multi-family housing is a per se Equal Protection violation, and both cases address "as applied" Equal Protection challenges, rather than a facial Equal Protection claim like the one White Oak asserts.

White Oak cites *Village of Arlington Heights* for the proposition that "[a] racially discriminatory intent or purpose behind prohibiting multiple family housing is a

violation of the Equal Protection Clause of the Fourteenth Amendment." However, the holding in *Village of Arlington Heights* that "[r]espondents simply failed to carry their burden of proving that discriminatory purpose was a motivating factor in the Village's decision" to rezone land from single-family to multiple-family classification, *id*. at 270, undermines White Oak's claim of discrimination. Moreover, the *Village of Arlington Heights* Court identified a list of non-exhaustive sources that might provide evidence of discriminatory intent: (1) "[t]he historical background of the [challenged] decision"; (2) "[t]he specific sequence of events leading up to the challenged decision"; (3) "[d]epartures from the normal procedural sequence"; (4) "[s]ubstantive departures . . . , particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached"; and (5) "[t]he legislative or administrative history . . . ." *Id*. at 267-68 (footnote omitted). White Oak's facial challenge ignores these sources. Had it asserted an as-applied Equal Protection challenge, the scant evidence of record would fail to tilt any of these factors in White Oak's favor.

*Dews* held that a city's ban on apartments and one-acre zoning requirement violated the Equal Protection Clause because a discriminatory intent could be inferred from the disproportionate harm to African-Americans, as evidenced by statistical and survey data, 109 F. Supp. 2d at 565-67, the perpetuation of racial segregation, *id*. at 567-68, the lack of a legitimate, bona fide governmental interest, *id*. at 568-69, the availability of less discriminatory alternatives to existing zoning, *id*. at 569, and the considerations set forth in *Village of Arlington Heights*, *id*. at 571-72. Again, White Oak's facial Equal Protection challenge does not address these factors.

In a nutshell, the authorities upon which White Oak relies hold that a racially discriminatory intent is required to support an Equal Protection claim. However, White Oak has wholly failed to demonstrate that the Zoning Resolution's prohibition against multiple-family dwellings, on its face, discriminates on the basis of race, and it has provided no evidence remotely suggesting that the Township's as-applied rejection of its proposed multi-family development was motivated by a racially discriminatory

purpose.  In addition, White Oak cites no authority that a zoning prohibition against multi-family developments, particularly in a rural area, constitutes a per se Equal Protection violation, and no such authority exists.

Therefore, we hold that the district court properly granted summary judgment in the Township's favor on White Oak's Equal Protection claim.

VI.

White Oak challenges the district court's dismissal of its substantive due process claim.  In dismissing this claim, the district court held that White Oak did not have a protected property interest in developing its property in accordance with its development plan.

The Fourteenth Amendment provides, in part, that "no State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (citations and internal quotation marks omitted).  While "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions[,] [a] local zoning ordinance survives a substantive due process challenge if there exists a rational relationship between the terms of the ordinance and a legitimate governmental purpose." *Richardson v. Twp. of Brady*, 218 F.3d 508, 512-13 (6th Cir. 2000) (internal citation and quotation marks omitted); *see also Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1223 (6th Cir. 1992)  (noting that in substantive due process review of a zoning ordinance, "the only permissible inquiry" for a federal court is "whether the legislative action is rationally related to legitimate state land use concerns").

Facially, the prohibition against multiple family dwellings survives White Oak's substantive due process challenge.  A stated purpose of the rural Zoning Resolution is to "make [the] community more attractive by assisting [in] the preservation of open space, unique natural resources and natural terrain features."  This is a legitimate land use goal, and the curtailment of dwellings to those of the single-family variety bears a rational relationship to that stated purpose. *Cf. Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 2, 9 (1974) (holding that a zoning ordinance restricting the use of land to "one-family dwellings" did not infringe upon various constitutional rights because "[a] quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs[,]" and it is permissible "to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.").

As applied, White Oak must demonstrate that it had a protected property interest to construct multiple family dwellings on its property. *Braun*, 519 F.3d at 573.  It lacked such a protected interest because the Zoning Resolution permits only single family dwellings in residential districts, and White Oak's subjective opinions to the contrary do not confer upon it a protected property interest. *See id.* ("In order to have a property interest in a benefit, a person must have more than a desire for it or unilateral expectation of it; rather, he must have a 'legitimate claim of entitlement to it.'") (citations omitted).

Although White Oak may seek a variance or a text amendment to the Zoning Resolution, White Oak failed to apply for either, and, even had it done so, it would have had no "legitimate claim of entitlement" or "justifiable expectation" to the Township's discretionary and speculative approval of these remedies. *See, e.g., Silver v. Franklin Twp., Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("If the Board had the discretion to deny [the plaintiff] a conditional zoning certificate for a condominium complex even if he complied with certain minimum, mandatory requirements, then [he] would not have a 'legitimate claim of entitlement' or a 'justifiable expectation' in the approval of his plan" sufficient to constitute a "property right."); *see also* OHIO REV.

CODE § 519.021 (permitting, but not requiring, "planned-unit developments" in township zoning resolutions).

VII.

White Oak complains further that the district court erred in holding that it had no protected property interest in the TIF District negotiated by Schroer, the previous owner of its property. The Trustees rescinded the TIF District, thereby preventing White Oak from constructing 94 residences on the property. The district court held that White Oak had no protected property interest in the TIF District because (1) the Trustees were authorized, in their discretion, to revoke the TIF District under OHIO REV. CODE § 5709.73, and (2) the Tax Injunction Act of 1937, 28 U.S.C. § 1341, barred the district court "from enjoining or restraining the operation of the TIF because White Oak had a plain remedy in state court by which to challenge the TIF." *See Moss v. Columbus Bd. of Educ.*, No. 2:00-CV-855, 2001 WL 1681117, at *8 (S.D. Ohio Sept. 27, 2001) (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102 (1981)).

In its initial appellate brief, White Oak challenged the first ruling only and ignored the district court's alternative holding that the Tax Injunction Act independently required dismissal of its claim. Even when the Township brought White Oak's apparent oversight to its attention, White Oak failed to argue in its reply brief that the district court's dismissal of its claim on the alternative, independent basis of the Tax Injunction Act was incorrect. Therefore, we hold that White Oak waived its appeal of the district court's dismissal of its claim on the basis of the Tax Injunction Act, and that ruling stands for purposes of this appeal. *See United States v. Archibald*, 589 F.3d 289, 298 n.7 (6th Cir. 2009) ("[I]ssues not raised in appellate briefs are deemed waived[.]") (citations and internal quotation marks omitted).

VIII.

Next, White Oak asserts that Township officials violated its procedural due process rights by allegedly holding secret meetings about its development plan, thereby depriving it of its right to be heard in a meaningful manner.

We have explained the requirements for procedural due process as follows:

> The right to procedural due process "requires that when a State seeks to terminate [a protected] interest . . . , it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." *Bd. of Regents v. Roth*, 408 U.S. 564, 570 n.7 (1972) (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)). Importantly, procedural due process rights are only violated when a *protected* liberty or property interest is denied without adequate hearing. Thus, in order to succeed on this claim, Plaintiff must show (1) that it was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law.

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006).

As discussed previously, White Oak had no protected property interest in constructing multiple family dwellings because they were prohibited by the Zoning Resolution. Moreover, the terms of the Zoning Resolution provided White Oak with adequate notice that its proposed development was proscribed, and the Township afforded White Oak the opportunity to be heard. In this regard, White Oak admits that its members had the opportunity to present, and did present, their development proposal to the Trustees and the Zoning Commission on March 26, 2007, and March 28, 2007, respectively. Notably, the four instances in which White Oak alleges the Zoning Commission held secret meetings – April 4, April 6, July 10, and July 16, 2007 – occurred *after* White Oak had presented, and the Trustees and Zoning Commission had already rejected, White Oak's proposal. Merely because White Oak disagrees with the Township's rejection of its proposal does not mean that the Township deprived it of adequate notice and a meaningful opportunity to be heard.

For these reasons, the district court did not err in granting summary judgment to the Township on White Oak's procedural due process claim.

IX.

Finally, White Oak argues that the district court erred in dismissing its civil conspiracy claim brought pursuant to 42 U.S.C. § 1983. The district court held that White Oak's allegations that "Defendants conspired to deprive it of its property and to rescind the TIF district" are "unsupported statements" which "are insufficient to support a claim for civil conspiracy under section 1983." In challenging this ruling, White Oak claims only that it provided detailed evidence of secret meetings in which Township officials allegedly schemed to oppose its proposed development and rescind the TIF District.

By its plain, unambiguous language, 42 U.S.C. § 1983 requires a "deprivation of [] rights, privileges, or immunities secured by the Constitution and laws[.]" *See also Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) ("A section 1983 claimant must show . . . the deprivation of a right secured by the Constitution or laws of the United States . . . .") (citation and internal quotation marks omitted). As discussed previously, White Oak had no protected property right in its proposed development or in the TIF District. Accordingly, the district court properly granted summary judgment to the Township on White Oak's federal civil conspiracy claim.

X.

For these reasons, we affirm the judgment of the district court.