NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0347n.06

No. 24-5606

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: CUMMINGS MANOOKIAN, PLLC, | ) | FILED<br>Jul 16, 2025<br>KELLY L. STEPHENS, Clerk |
| Debtor. | ) | |
| _____ | ) | |
| | ) | ON APPEAL FROM THE |
| BRIAN CUMMINGS; CUMMINGS | ) | UNITED STATES DISTRICT |
| MANOOKIAN, PLLC; JEANNE BURTON, | ) | COURT FOR THE MIDDLE |
| Trustee, | ) | DISTRICT OF TENNESSEE \| |
| | ) | UNITED STATES |
| Plaintiffs-Appellees, | ) | BANKRUPTCY COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| v. | ) | TENNESSEE AT NASHVILLE |
| | ) | |
| BRETTON KEEFER; AFSOON HAGH, | ) | OPINION |
| Defendants-Appellants. | ) | |
| | ) | |

Before: BATCHELDER, LARSEN, and RITZ, Circuit Judges.

LARSEN, Circuit Judge. Brian Cummings sued his former co-counsel (Afsoon Hagh), his former client (Bretton Keefer), and his former law firm (Cummings Manookian, PLLC), seeking a share of the attorney fees from a settlement he had worked on prior to withdrawing as counsel. Cummings and Hagh had practiced together at Cummings Manookian, which had since gone bankrupt and whose assets were in bankruptcy proceedings. The bankruptcy trustee (Jeanne Burton) intervened and removed the case to federal bankruptcy court. Hagh and Keefer moved to dismiss the complaint or compel arbitration, arguing that the bankruptcy court lacked jurisdiction because of an arbitration agreement in the attorney-client retainer. The bankruptcy court denied the motion and the district court affirmed. Hagh and Keefer sought an interlocutory appeal from this denial, which the district court granted. We AFFIRM the judgment of the bankruptcy court.

I.

In 2017, Bretton Keefer's mother passed away because of alleged medical malpractice by Vanderbilt University Medical Center. Keefer retained the law firm Cummings Manookian, PLLC (CM) to bring a wrongful death suit. Three attorneys at the firm worked on his case: Brian Cummings, Brian Manookian, and Afsoon Hagh, who is also Manookian's wife. Keefer signed a retainer agreement with CM that covered all disputes "within the Attorney-Client relationship" and stated, "neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration." Appellants' Dist. Ct. Br. App'x, R. 12-1, PageID 5497. Before CM filed suit against Vanderbilt on Keefer's behalf, Cummings left CM and started his own law firm; but he remained co-counsel on Keefer's case. After Cummings' departure, Manookian sent Keefer a new retainer agreement, which he explained was meant to "simply memorialize that you are now represented by Manookian PLLC" and that "[t]he terms are otherwise identical to the prior agreement you signed." Appellants' Dist. Ct. Br., R. 12, PageID 5404. This updated agreement contained the same mediation and arbitration language from the prior retainer agreement.

Soon after Cummings left CM, a state court imposed substantial financial sanctions on CM in a separate case, Manookian was suspended from the practice of law, and CM filed for bankruptcy. Hagh opened her own firm. Jeanne Burton was appointed as the bankruptcy trustee, and she immediately sued Hagh, Hagh's firm, and CM, claiming that Manookian had fraudulently transferred some of CM's assets to Hagh and her new law firm to avoid paying creditors.

After leaving CM, Cummings emailed Keefer asking him to confirm that Cummings was still authorized to work on his case against Vanderbilt and explaining that the email was meant

only to supplement the updated retainer agreement that Keefer had signed with Manookian. Keefer confirmed. Cummings later asked Keefer to sign a new engagement letter as a "follow up" to the previous retainer agreements. Appellants' Dist. Ct. Br., R. 12, PageID 5406–07. Cummings' updated agreement was identical to the prior agreements (including the mediation and arbitration clause) and merely added a requirement that, if Keefer chose to leave Cummings an online review, he would leave only a five-star positive review.

Keefer refused to sign this agreement and Cummings withdrew from the case, citing Keefer's refusal, Keefer's belief that Cummings was pressuring him to settle the case, and Hagh's characterization of Cummings as being fixated on his own financial outcome. Cummings withdrew just before the beginning of expert discovery. Hagh continued to represent Keefer and brought on new co-counsel, John Edwards. On the eve of trial, the case settled. All parties agreed to distribute settlement funds to Keefer and Edwards and to hold the remaining balance in escrow pending a judicial determination of fees earned by Hagh, Cummings, and CM.

Cummings then reached out to Hagh seeking to arbitrate the dispute over dividing fees, citing "the binding arbitration as provided for in the Attorney-Client Agreement." Appellants' Dist. Ct. Br. App'x, R. 12-1, PageID 5520. Hagh responded that she was unaware what dispute Cummings was referencing; in her view there was nothing to arbitrate because Cummings had been reimbursed for his advance litigation costs and that was all the agreement entitled him to. After further back and forth, Cummings sued Burton and Keefer in state court for a share of the settlement funds; he later amended his complaint to add Hagh as a defendant. In his complaint, Cummings claimed that he had handled all pre-lawsuit investigation, drafted the complaint, handled a portion of the written discovery, taken and defended several depositions, and retained and prepared witnesses. Burton removed Cummings' suit to federal bankruptcy court.

Before the bankruptcy court, Hagh and Keefer (hereinafter "Appellants") moved to dismiss the complaint or, alternatively, to stay the case pending mediation and arbitration. They argued that the arbitration provision in the retainer agreement with Keefer covered the present dispute over fees between Hagh and Cummings. The bankruptcy court issued a scheduling order setting an evidentiary hearing concerning Appellants' motion. The order stated that "[w]itness and exhibit lists must be filed no later than August 16, 2023." Cummings' Bankr. Ct. R. Designation, R. 8-4, PageID 5258. Appellants failed to file a witness list or exhibits by this deadline. At the hearing, however, Appellants invoked the retainer agreement, which was attached as an exhibit to their motion to dismiss. When pressed at the hearing on his failure to upload these exhibits through the correct process, counsel for Appellants explained that he "didn't understand that we were required to reupload exhibits that were filed in support of the motion" since the hearing concerned a motion to dismiss, not a motion for summary judgment that requires evidence. Appellants' Dist. Ct. Br. App'x, R. 12-1, PageID 5619–20. Appellants' counsel then asked the court to take judicial notice of the retainer agreement, but the bankruptcy court declined. The court then denied Appellants' motion to dismiss because, based on the evidence before it, (1) there was no arbitration agreement between Cummings and Hagh and (2) compelling arbitration would frustrate the purposes of the Bankruptcy Code. Appellants then sought review by the district court.

The district court construed Appellants' motion to dismiss as a request to compel arbitration and thus held that it could immediately review the bankruptcy court's denial under 9 U.S.C. § 16(a)(1). Section 16(a)(1) permits an interlocutory appeal from an order denying a request to compel arbitration. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) ("Congress provided for immediate interlocutory appeals of orders *denying* . . . motions to compel arbitration."). The district court explained that, even if Appellants' motion was not one to compel

arbitration, "the fact that it concerns arbitration would be sufficient to warrant granting a motion for leave to take an interlocutory appeal." Dist. Ct. Mem. & Order, R. 18, PageID 5706. On the merits, the district court affirmed for the reasons given by the bankruptcy court. Hagh and Keefer now bring an interlocutory appeal.

## II.

To begin, we have jurisdiction to hear this interlocutory appeal. As the district court correctly determined, this appeal falls under 9 U.S.C. § 16(a)(1) because Appellants' motion sought to compel arbitration. Appellants styled their motion as a "motion to dismiss or, in the alternative, to stay pending mediation and arbitration" and argued that the bankruptcy court should "compel arbitration." Appellants' Dist. Ct. Br. App'x, R. 12-1, PageID 5473, 5488–89. Appellants repeated this request during the hearing on the motion to dismiss, asking the bankruptcy court "to compel the parties to arbitration." *Id.*, PageID 5616. And Cummings construed Appellants' motion identically. He discussed the motion as one to compel arbitration in his opposition brief and during the hearing. We thus agree with the district court that Appellants' motion was one to compel arbitration, the denial of which is immediately appealable. § 16(a)(1). Having confirmed our jurisdiction, we review the bankruptcy court's decision "directly, and give[] no deference to the district court's decision." *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 225 (6th Cir. 2009) (citing *In re Hamilton*, 540 F.3d 367, 371 (6th Cir. 2008)).[1]

---

[1] Before the Supreme Court's decision in *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987), this court held that a bankruptcy court's decision to compel arbitration in a core proceeding should be reviewed for abuse of discretion. *See In re F & T Contractors, Inc.*, 649 F.2d 1229, 1232 (6th Cir. 1981). Bankruptcy courts in our circuit have questioned whether *McMahon* stripped them of discretion and thus "overruled" *F & T Contractors* and its predecessors. *Compare In re Wade*, 523 B.R. 594, 603–04, 609 (Bankr. W.D. Tenn. 2014) (determining that *McMahon* did not overrule *F & T Contractors*), *with In re Trinity Commc'ns, LLC*, 2012 WL 1067673, at *14–15 (Bankr. E.D. Tenn. Mar. 14, 2012) (concluding that *McMahon* overruled *F & T Contractors*). Our court "has not considered the intersection of the Arbitration Act and the Bankruptcy Code after

Appellants make two arguments before this court: that the parties entered an enforceable arbitration agreement, which extends to the claims in this case, and that the Federal Arbitration Act (FAA) mandates enforcement of that agreement. We reach neither argument because neither is responsive to the bankruptcy court's reasons for rejecting Appellants' claims.

The bankruptcy court offered two reasons for ruling against Appellants. First, the court held that it would not consider the arbitration agreement because it had not been properly admitted into evidence. Second, the court held that it would not enforce such an agreement in any event because doing so would interfere with the purposes of the Bankruptcy Code. Appellants have failed to appeal either dispositive holding. As such, they have waived their appeal.[2] *White Oak Prop. Dev., LLC v. Washington Township*, 606 F.3d 842, 854 (6th Cir. 2010) (holding that failure to appeal even one of two dispositive alternative holdings waived the entire appeal).

A.

Start with the Appellants' failure to challenge the bankruptcy court's exclusion of the retainer agreement from evidence. In the bankruptcy court, Appellants argued that an arbitration

---

*McMahon.*" *In re Patriot Solar Grp., LLC*, 569 B.R. 451, 457 (Bankr. W.D. Mich. 2017). Many of our sister circuits have, however, and they largely agree that a bankruptcy court's decision whether to compel arbitration in a core proceeding is still discretionary. *In re Gandy*, 299 F.3d 489, 494 (5th Cir. 2002) (reviewing the legal question whether a proceeding was core de novo and the decision whether to compel arbitration in a core case for abuse of discretion); *In re Eber*, 687 F.3d 1123, 1125–26 (9th Cir. 2012) (same); *In re Mintze*, 434 F.3d 222, 227–28 (3d Cir. 2006) (same); *Moses v. CashCall, Inc.*, 781 F.3d 63, 70–72 (4th Cir. 2015) (same); *In re Anderson*, 884 F.3d 382, 388 (2d Cir. 2018) (same). This appeal provides no occasion for this court to weigh in on the question, however.

[2] The bankruptcy court did not expressly phrase these two holdings as alternatives, and the line between alternative holdings and dictum can sometimes be hard to discern. Here, however, there are only two possibilities: either the court's disposition rested on its view that the contract containing the arbitration clause was not properly before it, leaving its discussion of the conflict between arbitration and the purposes of the bankruptcy clause as mere dictum, or these were alternative holdings. Either way, Appellants have failed to challenge the district court's reasoning on either ground, so their appeal fails.

clause contained in Keefer's retainer agreement deprived the bankruptcy court of jurisdiction. The bankruptcy court acknowledged the argument, but the court refused to consider the contract on which it was based because Appellants had "failed to file a witness and exhibit list" as required by the court's scheduling order "and, instead, sought the Court's judicial notice of documents attached to his motion" to dismiss. Appellants' Dist. Ct. Br. App'x, R. 12-1, PageID 5634. The court declined to take judicial notice and concluded, based on the record before it, that "there is no such agreement between plaintiff and Defendant Hagh." *Id.* It thus rejected Appellants' argument that the arbitration agreement deprived it of jurisdiction.

Appellants never appealed this evidentiary ruling. In the district court and before us, Appellants argued that "[t]he parties' arbitration agreement is valid and enforceable." Appellants' Dist. Ct. Br., R. 12, PageID 5489; Appellants' Br. at 19. And they explained why they believe the agreement binds these particular parties and extends to the dispute at issue. But these arguments in no way challenge the bankruptcy court's ruling excluding the contract from evidence. And the bankruptcy court did not rule on the arguments Appellants did raise because, in its view, the contract had not been properly included in the record for its consideration. *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible.").

Cummings pointed out Appellants' failure to challenge the bankruptcy court's exclusion, in the district court and here, arguing that "Appellants did not file a witness or exhibit list by the deadline set forth in the Court's scheduling order, and they chose not to call any witnesses or present any evidence at the evidentiary hearing." Cummings' Br. at 6, 22; Cummings' Dist. Ct. Br., R. 14, PageID 5670. Appellants could have argued in both courts that the bankruptcy court abused its discretion by failing to treat the contract as having been properly entered into evidence

or to take judicial notice of it. Alternatively, they could have asked the district court or this court to take judicial notice of it ourselves. But they did none of those things. As such, they have failed to contest the bankruptcy court's dispositive ruling that their contract-based jurisdictional argument failed because there was no arbitration contract in the record. "The failure to do so results in the abandonment of [their] claims." *Castellon-Vogel v. Int'l Paper Co.*, 829 F. App'x 100, 102 (6th Cir. 2020) (citing *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019)).

We will thus not consider Appellants' arguments about the existence, enforceability, and reach of the arbitration agreement. That question is not properly before us. *Id.*; *see also White Oak*, 606 F.3d at 854.

B.

Appellants also failed to challenge the bankruptcy court's alternative holding concerning the conflict between the FAA and the Bankruptcy Code. After the bankruptcy court refused to take judicial notice of the contract, it nevertheless pronounced that it would not enforce such an agreement because compelling arbitration would "frustrate the purpose of the Bankruptcy Code." Appellants' Dist. Ct. Br. App'x, R. 12-1, PageID 5636. The bankruptcy court considered this issue in detail. The court cited out-of-circuit precedent to conclude that an arbitrator should not decide whether the bankruptcy issue was core or non-core. *Id.*, PageID 5635 (citing *Phillips v. Congleton (In re White Mountain Mining Co.)*, 403 F.3d 164 (4th Cir. 2005)). It then applied a seven-factor test from our bankruptcy courts to decide whether to compel arbitration, concluding that those factors weighed in favor of the bankruptcy court retaining jurisdiction. *See id.*, PageID 5635–36 (citing *In re Wade*, 523 B.R. 594 (Bankr. W.D. Tenn. 2014); *In re Nu-Kote Holding, Inc.*, 257 B.R. 855 (Bankr. M.D. Tenn. 2001)). "For those reasons," the court denied the motion to dismiss. *Id.*, PageID 5636. So, to appeal the district court's ruling, Appellants needed to "confront" those

"reasons for dismissing [their] claims and explain why the court was wrong." *Castellon-Vogel*, 829 F. App'x at 102; *see also Scott*, 936 F.3d at 522–23. Appellants failed to do so and have thus waived their challenge. *See United States v. Archibald*, 589 F.3d 289, 298 n.7 (6th Cir. 2009) ("[I]ssues not raised in appellate briefs are deemed waived." (quoting *Fitts v. Sicker*, 232 F. App'x 436, 442 (6th Cir. 2007))).

While Appellants acknowledge that the bankruptcy court dismissed their motion based on the conflict between the FAA and the Bankruptcy Code, they never address this conflict or explain why the bankruptcy court's reasoning was faulty.[3] Appellants' briefing says nothing about the bankruptcy court's reliance on, or application of, the seven-factor test from *In re Nu-Kote* to determine that it should not compel arbitration. Nor do Appellants "address the impact of arbitration on the bankruptcy estate" or "point to any error" on that point. Burton's Br. at 18 (alterations omitted). The argument Appellants did brief—that the FAA applies because the parties entered a valid, enforceable arbitration agreement—does not challenge the bankruptcy court's conclusion that the Bankruptcy Code also applies and takes precedence in these circumstances. Appellants thus waived any challenge to the bankruptcy court's ruling on these points. *See Castellon-Vogel*, 829 F. App'x at 102; *White Oak*, 606 F.3d at 854.

\* \* \*

In sum, Appellants have a double waiver problem here. They waived any challenge to the bankruptcy court's exclusion of the retainer agreement from evidence; that alone was fatal to their

---

[3] Appellants also argue before us, and argued before the district court, that the bankruptcy court abused its discretion by substituting its own arguments for those advanced by the parties, thus violating the party presentation principle. This argument lacks any merit. Cummings and Burton argued extensively that compelling arbitration would conflict with the Bankruptcy Code. And Appellants contested this point and tried to distinguish the cases appellees cited. The bankruptcy court's reasoning thus relied squarely on the parties' arguments.

appeal.  Appellants also failed to challenge the bankruptcy court's alternative holding that it would not compel arbitration because arbitration would conflict with the purposes of the Bankruptcy Code.  Having failed to contest the bankruptcy court's reasons for ruling against them, Appellants have waived their appeal.

We AFFIRM the judgment of the bankruptcy court.