16-2496
In re Orrin S. Anderson

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2017

(Argued: October 11, 2017                    Decided: March 7, 2018)

Docket No. 16-2496

_____

IN RE: ORRIN S. ANDERSON, AKA ORRIN S. ANDERSON,
AKA ORINN SCOTT ANDERSON,

*Debtor*,

_____


ORRIN S. ANDERSON, on behalf of himself and all others
similarly situated, AKA ORINN SCOTT ANDERSON

*Plaintiff-Appellee,*

v.

CREDIT ONE BANK, N.A.,

*Defendant-Appellant.*

_____

Before: POOLER and DRONEY, *Circuit Judges*, and RAMOS,[1] *District Judge*.

Credit One Bank, N.A. appeals from an order of the United States District Court for the Southern District of New York (Nelson S. Román, *J.*), affirming the decision of the United States Bankruptcy Court for the Southern District of New York (Robert D. Drain, *Bankr. J.*) denying Credit One's motion to compel arbitration. Credit One sought to compel arbitration on the basis of a clause in the cardholder agreement between Credit One and Anderson. The bankruptcy court denied that motion, holding that Anderson's claims implicated core bankruptcy proceedings and that arbitration would present an inherent conflict with the congressional intent underlying the Bankruptcy Code. Credit One was entitled to an immediate appeal of the bankruptcy court's decision pursuant to the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(A). The district court affirmed the decision of the bankruptcy court, for substantially the same reasons.

On appeal, we conclude that Anderson's claim is not arbitrable. The parties now agree that the dispute concerns a core bankruptcy proceeding, so our sole inquiry is whether arbitrating the matter would present an inherent conflict

---

[1] Judge Edgardo Ramos, United States District Court for the Southern District of New York, sitting by designation.

with the goals of the Bankruptcy Code. We carefully consider the particular facts of this case in light of the expressed congressional preference for arbitration and conclude that Anderson's claims present an inherent conflict between arbitration and the Bankruptcy Code. The bankruptcy court did not abuse its discretion in denying the motion to compel arbitration in this case.

Affirmed and remanded.

_____

GEORGE F. CARPINELLO, Boies, Schiller & Flexner LLP (Adam R. Shaw, Anne M. Nardacci, and Jenna C. Smith, *on the brief*), Albany, NY, *for Plaintiff-Appellee*.

Charles Juntikka, New York, NY, *for Plaintiff-Appellee (on the brief)*.

NOAH A. LEVINE, Wilmer Cutler Pickering Hale and Dorr, LLP (Alan E. Schoenfeld, *on the brief*), New York, NY, *for Defendant-Appellant*.

Michael David Slodov, Chagrin Falls, OH, *for Defendant-Appellant*.

Evan M. Tager, Charles E. Harris, II, Mayer Brown LLP, Washington, D.C. and Kate Comerford Todd, Warren Postman, U.S. Chamber Litigation Center, *for amicus curiae Chamber of Commerce of the United States of America in support of Defendant-Appellant Credit One Bank, N.A.*

Tara Twomey, National Consumer Bankruptcy Rights Center, San Jose, CA *for amici curiae Professors Ralph Brubaker, Robert M. Lawless, and Bruce A. Markell in support of Plaintiff-Appellee Orrin S. Anderson.*

POOLER, *Circuit Judge*:

Orrin Anderson was a credit card holder with a predecessor in interest of Credit One Bank, N.A. ("Credit One"). In March 2012, Credit One "charged off" Anderson's delinquent debt, which means the bank changed the outstanding debt from a receivable to a loss in its own accounting books. It then sold Anderson's debt to a third-party buyer. Credit One reported the change in the debt's status to Equifax, Experian, and Transunion, indicating both that the bank had made the internal accounting change and that the debt remained unpaid. In 2014, Anderson filed a voluntary Chapter 7 bankruptcy petition and on May 6, 2014, the United States Bankruptcy Court for the Southern District of New York (Drain, *Bankr. J.*) entered a Discharge of Debtor Order of Final Decree ("discharge order") providing that Anderson was released from all dischargeable debts and closing Anderson's Chapter 7 case.

Anderson's claim arises from Credit One's subsequent refusal to remove the charge-off notation on Anderson's credit reports. In December 2014, the

4

bankruptcy court permitted Anderson to reopen his bankruptcy proceeding to file a putative class action complaint against Credit One. Anderson alleges that Credit One's refusal to change his credit report is an attempt to coerce Anderson into paying a debt that has already been discharged through bankruptcy, which is a violation of the bankruptcy court's discharge injunction. Credit One moved to stay the proceedings and initiate arbitration in accordance with an arbitration clause in Anderson's cardholder agreement with the bank. The bankruptcy court held that Anderson's claim was non-arbitrable because it was a core bankruptcy proceeding that went to the heart of the "fresh start" guaranteed to debtors under the Bankruptcy Code. Credit One filed an interlocutory appeal of that ruling, as is its right under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(A). The United States District Court for the Southern District of New York (Nelson S. Román, *J.*) agreed with the bankruptcy court.

The parties agree that the issues raised concern "core" bankruptcy proceedings and arguments regarding legislative history and statutory text were not raised below. Accordingly, we need only inquire whether arbitration of Anderson's claim presents the sort of inherent conflict with the Bankruptcy Code that would overcome the strong congressional preference for arbitration. We

5

agree with both lower courts that Anderson's complaint is non-arbitrable. The successful discharge of debt is not merely important to the Bankruptcy Code, it is its principal goal. An attempt to coerce debtors to pay a discharged debt is thus an attempt to undo the effect of the discharge order and the bankruptcy proceeding itself. Because the issue strikes at the heart of the bankruptcy court's unique powers to enforce its own orders, we affirm the district court decision below.

## BACKGROUND

In October 2002, Orrin Anderson opened a credit card account with First National Bank of Marin, a predecessor in interest to Credit One. Anderson's cardholder agreement contained an arbitration clause. Specifically, the arbitration agreement provided that "either [Anderson] or [Credit One] may, without the other's consent, require that any controversy or dispute . . . be submitted to mandatory, binding arbitration." App'x at 426.

In September 2011, Anderson's Credit One credit card account became delinquent and it remained so until March 2012, when Credit One "charged off"

Anderson's account, reclassifying Anderson's debt from a receivable to a loss.[2] In May 2012, Credit One sold Anderson's account to a third-party debt buyer. Credit One then reported the charge-off and the sale of the debt to the three major consumer credit reporting agencies Equifax, Experian, and TransUnion.

On January 31, 2014, Anderson filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York. On May 6, 2014, the bankruptcy court entered an order discharging all of Anderson's dischargeable debts and closing his Chapter 7 case.

In September 2014, Anderson contacted Credit One and asked it to remove the charge-off from his credit reports since the Credit One debt had been discharged in his bankruptcy proceeding. Credit One refused to contact the credit reporting agencies to correct the alleged error on Anderson's credit report. In October 2014, Anderson moved the bankruptcy court to reopen his case in order to pursue Credit One's "alleged violations of [Anderson's] discharge injunction." App'x at 94. In December 2014, the bankruptcy court granted

---

[2] Federal regulations require banks to "charge off" debt that is past due by over 180 days. Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36,903, 36,904 (June 12, 2000) ("[O]pen-end retail loans that become past due 180 cumulative days from the contractual due date should be classified Loss and charged off").

Anderson's motion to reopen. Anderson thereafter filed an amended class action complaint in the bankruptcy court alleging that Credit One violated 11 U.S.C. § 524(a)(2) by "knowingly and willfully failing to update the credit reports of [c]lass [m]embers to signify the debts owing to [Credit One] have been discharged in bankruptcy." App'x at 398. In essence, Anderson alleged that Credit One refused to update the credit reporting agencies regarding the discharged debt in an effort to coerce payment on the discharged debt in violation of the Section 524 discharge injunction.

In March 2015, Credit One moved to compel arbitration pursuant to the terms of the cardholder agreement and to stay the bankruptcy proceeding. The bankruptcy court held a hearing on May 5 and denied the motion nine days later. Less than a month later, in June 2015, Credit One filed an interlocutory appeal of the bankruptcy court's denial of its motion to compel arbitration. The district court affirmed the decision of the bankruptcy court a year later in June 2016. Credit One timely filed its notice of appeal on July 13, 2016 and amended it on July 26, 2016.

Oral argument was held in this case on October 11, 2017, and thereafter we asked the parties to submit supplemental briefs on the issue of mootness, given

Credit One's stipulation that it would update the credit reports of Anderson and other consumers. The parties submitted supplemental briefs on October 23, 2017. We agree with both parties that the stipulation does not moot the appeal because the question presented and the relief sought both remain unsettled, such that we retain jurisdiction under Article III's "case" or "controversy" requirement. U.S. Const. Art. III, § 2. We thus proceed to consider the merits of the appeal.

**DISCUSSION**

**I.    Standard of Review**

We begin by clarifying the standard of review, which we acknowledge has been inconsistently or imprecisely applied by this Court. Bankruptcy court decisions are subject to appellate review in the first instance by the district court, pursuant to the statutory scheme articulated in 28 U.S.C. § 158. The same section of the code grants jurisdiction to the circuit courts to hear appeals from the orders of the district court. 28 U.S.C. § 158(d). Because this scheme requires district courts to operate as appellate courts, we engage in plenary, or de novo, review of the district court decision. *In re Manville Forest Prod's Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990). We then apply the same standard of review employed by the district court to the decision of the bankruptcy court. Accordingly, we

review the bankruptcy court's findings of fact for clear error and its legal determinations de novo. *In re U.S. Lines, Inc.*, 197 F.3d 631, 640-41 (2d Cir. 1999).

Our review procedure is further dictated by the specific question posed in this case, namely, whether arbitration may be compelled in this bankruptcy proceeding. That decision requires the bankruptcy court to determine first whether the issue involves a "core" or "non-core" proceeding, a distinction we explain in more detail below (*infra*, section II). If the proceeding is "non-core," "bankruptcy courts generally must stay" the proceedings "in favor of arbitration." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000). If the matter involves a core proceeding, the bankruptcy court is tasked with engaging in a "particularized inquiry into the nature of the claim and the facts of the specific bankruptcy." *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006). If the bankruptcy court determines that arbitration would create a "severe conflict" with the purposes of the Bankruptcy Code, it has discretion to conclude that "Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements." *Id.*

We agree with the district court that the bankruptcy court's discretion to stay the proceedings may only be exercised if it properly assessed the factors

related to the analysis of a potential inherent conflict between arbitration and the bankruptcy proceeding. *In re Anderson*, 553 B.R. 221, 226 (S.D.N.Y. 2016). Accordingly, we engage in de novo review of the bankruptcy court's determinations of whether the proceeding is core or non-core and whether arbitration would present the sort of "severe conflict" with the Bankruptcy Code that would make arbitration inappropriate. *Hill*, 436 F.3d at 108. If we find that the bankruptcy court's legal analysis was correct, we review its decision to either stay the proceedings or decline to enforce the arbitration agreement for abuse of discretion. *In re U.S. Lines, Inc.*, 197 F.3d at 641.

In sum, we engage in clear error review of the bankruptcy court's findings of fact and de novo review of its legal conclusions, including the core/non-core and inherent conflict determinations. If an inherent conflict was properly found, we review the decision of whether to enforce the arbitration agreement under the deferential abuse of discretion standard.

## II.    Core or Non-Core Bankruptcy Proceedings

In 28 U.S.C. § 157(b)(2), Congress articulated "a nonexclusive list of 16 types of proceedings" that it considers "core" to the power of the bankruptcy court. *Wellness Intern. Network, Ltd. V. Sharif*, 135 S. Ct. 1932, 1940 (2015).

Proceedings that are "core" are those that involve "more pressing bankruptcy concerns." *In re U.S. Lines, Inc.*, 197 F.3d at 640. We have previously held that "[b]ankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters." *Hill*, 436 F.3d at 108.

The parties now agree that Anderson's claim is a "core" proceeding. Accordingly, we turn to the second step of our analysis to assess whether Congress intended for this statutory right to be non-arbitrable, such that the bankruptcy court had the discretion to refuse to compel arbitration in this core bankruptcy proceeding.

## III. Congressional Intent

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., "establishes a federal policy favoring arbitration." *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotation marks omitted). This preference, however, is not absolute. "Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Id.*, 482 U.S. at 226. In *McMahon*, the Supreme Court explained that "[t]he burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 227. Congressional intent

12

may be discerned through the "text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* (internal quotation marks and citation omitted).

Though Credit One argues on appeal that intent may be discerned through the text and legislative history, these arguments were not raised by either party below. *In re Anderson*, 553 B.R. at 227 n. 3. "It is well settled that arguments not presented to the district court are considered waived and generally will not be considered for the first time on appeal." *Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 50 (2d Cir. 2015). That doctrine is, of course, "entirely prudential" and we are free to consider the arguments if doing so is "necessary to avoid a manifest injustice." *Id.* (quoting *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008)). However, "the circumstances normally do not militate in favor of an exercise of discretion to address . . . new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." *In re Nortel*, 539 F.3d at 133 (internal brackets and quotation marks omitted). Accordingly, we decline to consider this new argument, which did not benefit from the analysis of

the courts below. We need only consider whether there is an "inherent conflict between arbitration" and the Bankruptcy Code. *McMahon*, 482 U.S. at 227.

In order to determine whether enforcement of an arbitration agreement would present an inherent conflict with the Bankruptcy Code, we must engage in a

> particularized inquiry into the nature of the claim and the facts of the specific bankruptcy. The objectives of the Bankruptcy Code relevant to this inquiry include the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.

*Hill*, 436 F.3d at 108 (citation and internal quotation marks omitted).

Anderson's complaint alleges that Credit One violated Section 524(a)(2) of the Bankruptcy Code when it refused to update the credit reports of Anderson and other similarly situated discharged debtors. Section 524(a)(2) explains that a bankruptcy discharge

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2). Anderson specifically alleges that Credit One's refusal reflected "a policy of not updating credit information for debts that are

14

discharged in bankruptcy for the purpose of collecting such discharged debt." App'x at 384. Anderson has alleged that debt marked as "charged off" rather than "discharged" is more valuable to third-party debt buyers, who believe debtors will be compelled to pay the discharged debt in order to clear this negative item from their credit reports. This behavior is alleged to occur across a class of debtors.

It is well established that the discharge is the foundation upon which all other portions of the Bankruptcy Code are built. We have observed that "[b]ankruptcy allows honest but unfortunate debtors an opportunity to reorder their financial affairs and get a fresh start. This is accomplished through the statutory discharge of preexisting debts." *In re DeTrano*, 326 F.3d 319, 322 (2d Cir. 2003) (internal citation and quotation marks omitted). We have previously described the "fresh start" procured by discharge as the "central purpose of the bankruptcy code" as shaped by Congress, permitting debtors to obtain a "fresh start in life and a clear field unburdened by the existence of old debts." *In re Bogdanovich*, 292 F.3d 104, 107 (2d Cir. 2002). The "fresh start" is only possible if the discharge injunction crafted by Congress and issued by the bankruptcy court is fully heeded by creditors and prevents their further collection efforts.

15

Violations of the injunction damage the foundation on which the debtor's fresh start is built.

Following the logic of *U.S. Lines* and *Hill*, we find that arbitration of a claim based on an alleged violation of Section 524(a)(2) would "seriously jeopardize a particular core bankruptcy proceeding." *In re U.S. Lines, Inc.*, 197 F.3d at 641. We come to this conclusion because 1) the discharge injunction is integral to the bankruptcy court's ability to provide debtors with the fresh start that is the very purpose of the Code; 2) the claim regards an ongoing bankruptcy matter that requires continuing court supervision; and 3) the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the Code. The fact that Anderson's claim comes in the form of a putative class action does not undermine this conclusion.

First, discharge is the paramount tool used to effectuate the central goal of bankruptcy: providing debtors a fresh financial start. In *Hill*, we distinguished that claim involving an automatic stay in an already-closed bankruptcy case from those cases in which courts found the claim to be non-arbitrable by observing that "Hill's bankruptcy case is now closed and she has been discharged. Resolution of Hill's claim against MBNA therefore cannot affect an

ongoing reorganization, and arbitration would not conflict with the objectives of the automatic stay." 436 F.3d at 110. In the non-arbitrable cases on the other hand, "resolution of the arbitrable claims directly implicated matters central to the purposes and policies of the Bankruptcy Code." 436 F.3d at 110. Because there is no matter more "central to the purposes and policies of the Bankruptcy Code" than the fresh start provided by discharge, arbitration of Anderson's claim presents an inherent conflict with the Bankruptcy Code.

Second, Anderson's claims center on alleged violations of a discharge injunction that was still eligible for active enforcement. In *Hill*, we declined to find an inherent conflict where the debtor "no longer require[d] the protection of the stay to ensure her fresh start" because her estate had been fully administered. *Id.* Anderson alleges the precise opposite in his complaint: the protection of the injunction is absolutely required to ensure his fresh start and he claims that Credit One violated that injunction. Unlike the automatic stay, the discharge injunction is likely to be central to bankruptcy long after the close of proceedings. The automatic stay exists only while bankruptcy proceedings continue to ensure the status quo ante, while the integrity of the discharge must be protected indefinitely. Enforcement of the arbitration agreement in this case would

17

interfere with the fresh start bankruptcy promises debtors, which would create an inherent conflict with the Code.

Third, enforcement of injunctions is a crucial pillar of the powers of the bankruptcy courts and central to the statutory scheme. In *Hill*, we recognized that we must consider "the undisputed power of a bankruptcy court to enforce its own orders" as part of our "particularized inquiry into the nature of the claim and the facts of a specific bankruptcy." *Id.* at 108 (quoting *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1069 (5th Cir.1997)). In that case we determined that the automatic stay "which arises by operation of statutory law" was not "so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions." *Id.* at 110. Credit One argues that because the discharge injunction at issue here is based in a statute and executed by the court as a standard form using boilerplate language, the unique powers of the bankruptcy court are not implicated in any meaningful way. We disagree. Though the discharge injunction itself is statutory and thus a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated.

18

Congress afforded the bankruptcy courts wide latitude to enforce their own orders, specifically granting these specialty courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.[3] 11 U.S.C. § 105(a). We have previously observed that "[t]he statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders." *In re Kalikow*, 602 F.3d 82, 96 (2d Cir. 2010). Neither the statutory basis of the order nor its similarity—even uniformity—across bankruptcy cases alters the simple fact that the discharge injunction is an order issued by the bankruptcy court and that the bankruptcy court alone possesses the power and unique expertise to enforce it. Indeed, as one set of amici noted in their brief, violations of a discharge injunction simply cannot be described as "claims" subject to arbitration and the typical tools of contract interpretation.[4] Instead, violations of

---

[3] Though it is not at issue in this appeal, amici persuasively document the judicial and legislative history of the discharge injunction and argue that "Congress deliberately chose to vest the federal court presiding over a bankruptcy case with injunctive power to enforce the bankruptcy debtor's discharge." Amici Curiae Br. for Professors Ralph Brubaker, Robert M. Lawless, and Bruce A. Markell in Support of Appellee ("Amici Professors Br.") at 5.

[4] Amici Professors Br. at 12-18.

this court-ordered injunction are enforceable only by the bankruptcy court and only by a contempt citation.

The power to enforce an injunction is complementary to the duty to obey the injunction, which the Supreme Court has described as a duty borne out of "respect for judicial process." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,* 445 U.S. 375, 387 (1980) (internal quotation marks omitted). That same respect for judicial process requires us to hold that the bankruptcy court alone has the power to enforce the discharge injunction in Section 524. Arbitration of the claim would thus present an inherent conflict with the Bankruptcy Code.

Finally, we observe that the class action nature of this case does not alter our analysis. In *Hill*, we determined that the posture of the claim as a putative class action cut against Hill's argument that her claim was "integral to her individual bankruptcy proceeding." *Hill*, 436 F.3d at 110. We have already established that the discharge injunction at issue here is absolutely integral to the fresh start assured by Anderson's bankruptcy proceeding. We further observe that the procedural posture of Hill's case—a claim for a violation of the automatic stay long after that stay had been rendered moot by the closing of her bankruptcy case—undercut the claimed class action in a way that is not relevant

20

to Anderson's claim. We observed that like the plaintiff herself, many of Hill's putative class members were "no longer in bankruptcy proceedings" and that the effort to tie her claim to this larger amorphous class suggested a "lack of close connection" between her claim and the underlying bankruptcy case. *Id.* Again, the facts of Anderson's case are easily distinguished. Unlike violations of stays that are already mooted by the conclusion of bankruptcy proceedings, where the putative class members are all allegedly victims of willful violations of the discharge injunction issued by the bankruptcy court there is a continuing disruption of the debtors' ability to obtain their fresh starts.

**IV.    Discretion to Decline to Enforce Arbitration Agreement**

Because we determine there is an inherent conflict between arbitration of Anderson's claim and the Bankruptcy Code, we must also assess whether the bankruptcy court abused its discretion in declining to enforce the arbitration agreement.

We find that the bankruptcy court "properly considered the conflicting policies in accordance with law." *In re U.S. Lines, Inc.*, 197 F.3d at 641. Accordingly, "we acknowledge its exercise of discretion and show due deference to its determination that arbitration will seriously jeopardize a particular core

21

bankruptcy proceeding." *Id.* We hold that the bankruptcy court did not abuse its discretion by denying Credit One's motion to compel arbitration in this case.

**CONCLUSION**

For the foregoing reasons, we hereby AFFIRM the order of the district court and REMAND for further proceedings consistent with this opinion.