19-648 (L)
*Belton v. GE Capital Retail Bank*

# United States Court of Appeals
# For the Second Circuit

August Term 2019

Argued: April 21, 2020
Decided: June 16, 2020

Nos. 19-648 (L), 19-655 (Con.)

IN RE: NYREE BELTON, KIMBERLY BRUCE,

*Debtors.*

NYREE BELTON,

*Plaintiff-Appellee,*

KIMBERLY BRUCE,

*Debtor-Appellee,*

*v.*

GE CAPITAL RETAIL BANK,

*Defendant-Appellant,*

CITIGROUP INC., CITIBANK, N.A.,

*Appellants.*

Appeal from the United States District Court
for the Southern District of New York
Nos. 15-cv-1934, 15-cv-3311,
Vincent L. Briccetti, *Judge*.

---

Before:     WINTER, WESLEY, AND SULLIVAN, *Circuit Judges*.

Appellants GE Capital Retail Bank, Citigroup Inc., and Citibank, N.A. appeal from an order of the district court (Briccetti, *J.*) denying Appellants' motions to compel arbitration. Specifically, Appellants argue that Appellees – two debtors who previously held credit card accounts managed by Appellants – were obliged to arbitrate a dispute concerning whether Appellants violated the bankruptcy court's discharge orders when they failed to correct the status of Appellees' credit card debt on their credit reports. Both the bankruptcy court and the district court determined that the arbitration clauses in the credit card agreements were unenforceable. On appeal, we conclude that though the text and history of the Bankruptcy Code are ambiguous as to whether Congress intended to displace the Federal Arbitration Act in this context, our precedent is clear that the two statutes are in inherent conflict on this issue. We therefore affirm the district court's order.

AFFIRMED AND REMANDED.

> GEORGE F. CARPINELLO (Adam R. Shaw, Anne M. Nardacci, *on the brief*), Boies Schiller Flexner LLP, Albany, NY; Charles Juntikka, Charles Juntikka & Associates LLP, New York, NY, *for* Appellees.
>
> JOSEPH L. NOGA, Jenner & Block LLP, New York, NY; Matthew S. Hellman, Jenner & Block LLP, Washington, DC, *for* Appellant GE Capital Retail Bank.
>
> BENJAMIN R. NAGIN (Eamon P. Joyce, Jonathan W. Muenz, Qais Ghafary, *on the brief*), Sidley Austin LLP, New York, NY, *for* Appellants Citigroup Inc. and Citibank, N.A.

RICHARD J. SULLIVAN, *Circuit Judge*:

Is the alleged violation of a bankruptcy court discharge order an arbitrable dispute? Though we answered this very question only two years ago, we are called upon to reconsider the issue here. If we were writing on a blank slate, perhaps our conclusion would be different. But as our Court's precedent is clear, and as that precedent is not incompatible with intervening caselaw or the text and history of the Bankruptcy Code, we are bound to answer the question in the negative. Accordingly, we AFFIRM the order of the district court (Briccetti, *J.*) affirming the decision of the bankruptcy court (Drain, *Bankr. J.*) denying Appellants' motions to compel arbitration.

## I. Background

Appellants GE Capital Retail Bank ("GE"), Citigroup Inc., and Citibank, N.A. (together, "Citi" and, collectively with GE, the "Banks") appeal the district court's order and judgment affirming the bankruptcy court's denial of the Banks' motions to compel arbitration. In 2007, Appellees Nyree Belton and Kimberly Bruce (together, the "Debtors") opened credit card accounts with GE and Citi, respectively. Unfortunately, the Debtors quickly fell behind on their credit card debt and began to miss payments. The Banks eventually "charged off" that

3

delinquent debt – changing its accounting treatment from a receivable to a loss – and sold it to third-party consumer debt purchasers. The Banks also reported the change in the debt's status to the three major credit reporting agencies. In turn, those agencies updated the Debtors' credit reports to reflect the debt as "charged off," indicating that the debt was severely delinquent but still outstanding.

Within the next few years, both Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code (the "Code"). At the completion of the liquidation processes, the bankruptcy court entered orders discharging the Debtors' debts. Under 11 U.S.C. § 524(a)(2), those orders operate as "injunction[s]" against any future collection attempts.

Nevertheless, after the Debtors emerged from bankruptcy, their credit reports continued to reflect their credit card debt as "charged off" without any mention of the bankruptcy discharge. The Debtors assert that this was not a simple mistake, but rather an attempt by the Banks to coerce the Debtors into repaying the debt notwithstanding the bankruptcy court's orders. As a result, the Debtors, purporting to represent a nationwide class of similarly situated debtors, reopened their bankruptcy cases and initiated adversary proceedings against the Banks, alleging that the Banks' refusal to update their credit reports violated the

4

bankruptcy court's orders and the associated injunctions provided by section 524(a)(2). The Debtors seek a contempt citation and damages.

In response, the Banks moved to enforce mandatory arbitration clauses in the Debtors' credit card account agreements. Ultimately, both the bankruptcy court and the district court rejected the Banks' motions, finding that the dispute was not arbitrable due to an inherent conflict between the Code and the Federal Arbitration Act (the "Arbitration Act"). The Banks appealed.

## II. Jurisdiction & Standard of Review

We have jurisdiction to decide this case under 28 U.S.C. § 158(d) and 9 U.S.C. § 16(a)(1). As for the applicable standard of review, "[t]he rulings of a district court acting as an appellate court in a bankruptcy case are subject to plenary review." *Stoltz v. Brattleboro Hous. Auth.* (*In re Stoltz*), 315 F.3d 80, 87 (2d Cir. 2002). In other words, "[w]hen reviewing a bankruptcy court decision that was subsequently appealed to a district court, we review the bankruptcy court's decision independent of the district court's review." *Statek Corp. v. Dev. Specialists, Inc.* (*In re Coudert Bros. LLP*), 673 F.3d 180, 186 (2d Cir. 2012). In so doing, we review the bankruptcy court's legal conclusions *de novo*. *ANZ Sec., Inc. v. Giddens* (*In re Lehman Bros. Inc.*), 808 F.3d 942, 946 (2d Cir. 2015).

5

## III. Discussion

We are called upon to decide a narrow issue: whether a dispute concerning the violation of a bankruptcy discharge order is arbitrable.[1]

The Arbitration Act requires courts to strictly enforce arbitration agreements. But like any statutory directive, that mandate may be overridden by contrary congressional intent. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Such an intent may be deduced from "the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* at 227 (internal quotation marks, citation, and alteration omitted).

Employing the *McMahon* test here requires us to exhaustively parse the Code in search of such congressional intent. But we are not writing on a blank slate. In 2018, this Court considered a nearly identical dispute in *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382 (2d Cir.), *cert. denied*, 139 S. Ct. 144 (2018). Like this case, *Anderson* concerned a credit card account holder seeking to bring an adversary proceeding against a bank for violating a bankruptcy discharge

---

[1] As discussed below, our decision does not address whether such a dispute is amenable to class adjudication.

6

order. And like the account agreements here, the agreement in *Anderson* contained a mandatory arbitration provision.

The *Anderson* Court nevertheless refused to enforce the parties' arbitration agreement, finding that Congress did not intend for disputes over the violation of a discharge order to be arbitrable. The Court reached that conclusion by determining that arbitration was in "inherent conflict" with enforcement of a discharge order because: (1) the discharge injunction is "integral" to the bankruptcy process; (2) "the claim [concerns] an ongoing bankruptcy matter that requires continuing court supervision;" and (3) "the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the Code." *Id.* at 390. Importantly, the Court arrived at this holding without considering the Code's text or legislative history, which the parties had not argued before the district court. *Id.* at 388–89.

Given the overwhelming similarities between this case and *Anderson*, our hands seem to be bound by that panel's decision. *See Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 378 (2d Cir. 2016). But the Banks tell us otherwise.

According to them, the Supreme Court's recent decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), undermined *Anderson*'s interpretation of

*McMahon* and its progeny. Specifically, they argue that *Epic Systems* rejected the notion that an inherent conflict between statutory purpose and arbitration is independently sufficient to displace the Arbitration Act. The Banks instead see *Epic Systems* as requiring a text-first approach that cannot be satisfied by reference only to statutory purpose.

We disagree. To be sure, *Epic Systems* describes an exacting gauntlet through which a party must run to demonstrate congressional intent to displace the Arbitration Act. *See id.* at 1624 ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." (internal quotation marks omitted)). But despite the difference in tone, "the test [*Epic Systems*] employs is substantially the same as *McMahon*'s." *Henry v. Educ. Fin. Serv.* (*In re Henry*), 944 F.3d 587, 592 (5th Cir. 2019). More to the point, *Epic Systems* never stated an intention to overrule *McMahon* or render any prong of its tripartite test a dead letter. *See Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016); *Shalala v. Ill. Council on Long Term Care Inc.*, 529 U.S. 1, 18 (2000) (acknowledging that the Court "does not normally overturn, or . . . dramatically limit, earlier authority *sub silentio*").

8

What, then, is the impact of *Epic Systems* on *McMahon* (and thus *Anderson*)? Like the Fifth Circuit, we see *Epic Systems* as clarifying that where two of *McMahon*'s factors clash, a court should resolve the dispute in favor of the statutory text and any contextual clues derived therefrom. *See Henry*, 944 F.3d at 592. But that gloss on *McMahon* does not undermine *Anderson*'s conclusion – that an "inherent conflict" is sufficient to displace the Arbitration Act where the statutory text is ambiguous.

Of course, *Anderson*'s survival does not end our inquiry. *Anderson*, by virtue of the posture in which it arrived before the panel, was narrowly circumscribed. Specifically, the parties had waived any arguments concerning the Code's text or legislative history, and the Court declined to consider them. *Anderson*, 884 F.3d at 388–89. That is not the case here. We must therefore reexamine *Anderson*'s conclusion in light of the Code's text and history, and *Epic Systems*'s reminder that a statute's purpose cannot circumvent its text.

Here, no one disputes that the Code is silent on the issue of arbitration in this context. The contested question is what to make of that fact. *Epic Systems* clearly viewed statutory silence as probative evidence that Congress did not intend to displace the Arbitration Act. *See* 138 S. Ct. at 1626 (noting that "Congress

9

has . . . shown that it knows how to override the Arbitration Act when it wishes"). But it did not treat silence as outcome determinative – since that would have rendered much of *Epic Systems*'s analysis surplusage. Accordingly, we do not think that the Code's failure to expressly disclaim arbitrability undermines *Anderson*'s conclusion.

The Banks do, however, have one textual argument with some teeth: state courts have concurrent jurisdiction to enforce the discharge injunction as an affirmative defense in collections suits. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803 (2019). The Banks sensibly posit that if state courts are competent to interpret the scope of a discharge order, then so too are arbitrators. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1157 n.11 (3d Cir. 1989) ("Where Congress has specifically indicated subjugation of arbitration to the dictates of the bankruptcy laws in one situation, but not in another, we must presume that Congress neither intended to subjugate arbitration in the second instance, nor saw the two laws as conflicting in this respect.").

But what the Banks overlook is that the Debtors are not invoking the discharge injunction as a defense to collection. Rather, they are proceeding affirmatively to recover damages for an alleged violation of a court order and

injunction. Because our Court has never identified a private right of action under section 524, the Debtors have pursued this remedy through a contempt proceeding. *See Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91–92, 92 n.7 (2d Cir. 2016); *Yaghobi v. Robinson*, 145 F. App'x 697, 699 (2d Cir. 2005). And as this Court and numerous other circuits have concluded, the only court that may offer a contempt remedy is the court that issued the discharge order – the bankruptcy court. *See Anderson*, 884 F.3d at 391 (recognizing that "the bankruptcy court alone has the power to enforce the discharge injunction in Section 524" through a contempt citation); *accord Crocker v. Navient Sols., L.L.C. (In re Crocker)*, 941 F.3d 206, 216–17 (5th Cir. 2019); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509-10 (9th Cir. 2002); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916–17 (7th Cir. 2001) (Posner, *J.*).

As a result, we conclude that the Code's text offers little guidance on Congress's intentions in the context of contempt proceedings like those at issue here. We further find that the legislative history of the relevant provisions is similarly unenlightening. We are therefore left with *Anderson*'s conclusion that the Code is in "inherent conflict" with arbitration. And under this Circuit's precedent, that is enough to displace the Arbitration Act. *See Anderson*, 884 F.3d at 389–92; *see*

11

*also MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (citing *Ins. Co. of N. Am. v. NGC Settlement Tr. & Asbestos Claims Mgmt. Corp.* (*In re Nat'l Gypsum Co.*), 118 F.3d 1056, 1069 (5th Cir. 1997)); *U.S. Lines, Inc. v. American Steamship Owners Mut. Prot. & Indem. Assoc., Inc.* (*In re U.S. Lines, Inc.*), 197 F.3d 631, 640–41 (2d Cir. 1999). Accordingly, we are bound to affirm the district court's judgment.

\*     \*     \*

Having determined that *Anderson* controls the issue before us, we pause only to offer a few words concerning the scope of that conclusion. Specifically, we have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings, and neither our decision today nor *Anderson* should be read as a tacit endorsement of such.

Indeed, permitting a bankruptcy court to adjudicate compliance with another court's order appears to be in severe tension with *Anderson*'s reasoning. In particular, *Anderson* found that the Code displaced the Arbitration Act, in part, because contempt proceedings involve considerations that the issuing court is uniquely positioned to assess. *See* 884 F.3d at 390–91 ("[T]he bankruptcy court retains a unique expertise in interpreting its own injunctions and determining

when they have been violated.").  It seems to us that this rationale is anathema to a nationwide class action.[2]

More fundamentally, we question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order.  Most circuits that have considered the issue have rejected the notion.  *See Crocker*, 941 F.3d at 216–17 ("We adopt the language of [*Anderson*] that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold 'respect for judicial process.'"); *Alderwoods Grp.*, 682 F.3d at 970 ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."); *Walls*, 276 F.3d at 509–10 (same); *Cox*, 239 F.3d at 916–17 (same); *but see Bassette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000) (holding that a debtor is not required to "bring her claims in the court that issued the original discharge order").[3]  And those cases are buttressed by the Supreme Court's recent decision in *Taggart*, which made clear that the contempt

---

[2] To be sure, *Anderson* noted that "the class action nature" of the case did not alter the Court's conclusion.  884 F.3d at 391.  But we read that language to refer to the Court's holding that the claims were not arbitrable, not to the unpresented issue of class certification and bankruptcy court jurisdiction.

[3] But even in *Bassette*, on remand, the District of Rhode Island found that its jurisdiction was limited to "claims that are related to bankruptcy estates in the District of Rhode Island," and refused to certify a nationwide class.  *Bassette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 449 (D.R.I. 2002).

powers provided under sections 524(a)(2) and 105(a) "bring with them the 'old soil' that has long governed how courts enforce injunctions." 139 S. Ct. at 1802.

So, while we affirm the district court's judgment, we leave for another day the issue of class certification.

## IV. Conclusion

Accordingly, we **AFFIRM** the order of the district court and **REMAND** for further proceedings consistent with this opinion. The Debtors' motion for summary affirmance is **DENIED** as moot.