# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of September, two thousand twenty-four.

PRESENT:
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> ALISON J. NATHAN,
> *Circuit Judges*.

---

In re: Boston Generating, LLC,

*Debtor*.

---

MARK HOLLIDAY, the Liquidating Trustee of the BosGen Liquidating Trust,

*Appellant*,

v.

CREDIT SUISSE SECURITIES (USA) LLC, CREDIT SUISSE (USA), INC., D. E. SHAW & CO., L.P., D. E. SHAW LAMINAR PORTFOLIOS, L.L.C., GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, MASON CAPITAL LTD., MASON CAPITAL MANAGEMENT LLC, MORGAN STANLEY & CO. LLC, RBS HOLDINGS USA, INC., TACONIC CAPITAL PARTNERS 1.5 LP,

21-2543-br

THE RAPTOR GLOBAL PORTFOLIO LTD., THE TUDOR BVI GLOBAL PORTFOLIO L.P., TUDOR PROPRIETARY TRADING, L.L.C., TUDOR INVESTMENT CORPORATION, EX ORBIT, LTD, SATELLITE SENIOR INCOME FUND, LLC, CMI HOLDINGS INVESTMENTS LTD., CASTLERIGG PARTNERS, LP, SATELLITE ASSET MANAGEMENT, LP, SANDELL ASSET MANAGEMENT CORPORATION, SATELLITE OVERSEAS FUND LTD., THE APOGEE FUND, LTD., SATELLITE FUND IV, LP, SATELLITE OVERSEAS FUND V, LTD., SATELLITE OVERSEAS FUND VI, LTD., SATELLITE OVERSEAS FUND VIII, LTD., SATELLITE OVERSEAS FUND IX, LTD., SATELLITE FUND I, LP, SATELLITE FUND II, LP, EX ORBIT GROUP, LTD., SATELLITE OVERSEAS FUND VII, LTD., TRANSFEREE DEFENDANTS, ANCHORAGE CAPITAL MASTER OFFSHORE, LTD., STONEHILL INSTITUTIONAL PARTNERS, L.P., ANCHORAGE CAPITAL GROUP, L.L.C., a/k/a ANCHORAGE ADVISORS, LLC, ANCHORAGE CAPITAL MASTER OFFSHORE II, LTD., STONEHILL CAPITAL MANAGEMENT LLC, BOSTON GENERATING OFFSHORE HOLDINGS, LTD., CEDARVIEW CAPITAL MANAGEMENT LP, CITIGROUP ALTERNATIVE INVESTMENTS LLC, as successor in interest to EPIC ASSET MANAGEMENT LLC, EPIC DISTRESSED DEBT OPPORTUNITIES FUND LTD., LONGACRE CAPITAL PARTNERS (QP) LP, LONGACRE MASTER FUND, LTD., HARBINGER CAPITAL PARTNERS, LLC, BOSTON HARBOR POWER LLC, POWER MANAGEMENT FINANCING LLC, HARBINGER CAPITAL PARTNERS MASTER FUND I, LTD., f/k/a HARBERT DISTRESSED INVESTMENT MASTER FUND, LTD., SCOTTWOOD CAPITAL MANAGEMENT LLC, SCOTTWOOD FUND, LTD., TRADE CLAIM

2

ACQUISITION LLC, SENECA CAPITAL INTERNATIONAL LTD., GREENWICH INTERNATIONAL LTD., SENECA CAPITAL LP, DB HOLDINGS INC., EPIC DISTRESSED DEBT HOLDINGS, INC., LATIGO MASTER FUND, LTD., CEDARVIEW EBG HOLDINGS, LTD., GUGGENHEIM PORTFOLIO CO. XII LLC, LATIGO PARTNER LP,

*Appellees.*

---

FOR APPELLANT:

JOSHUA J. BRUCKERHOFF, Reid Collins & Tsai LLP (Gregory S. Schwegmann, Austin, Texas; William T. Reid, IV and Yonah Jaffe, New York, New York, *on the brief*), Austin, Texas.

FOR APPELLEES:

PHILIP D. ANKER (Alan E. Shoenfeld and Joel Millar, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, *for* Credit Suisse Securities (USA) LLC, Credit Suisse (USA), Inc., D. E. Shaw & Co., L.P., D. E. Shaw Laminar Portfolios, L.L.C., Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Mason Capital Ltd., Mason Capital Management LLC, Morgan Stanley & Co. LLC, RBS Holdings USA, Inc., and Taconic Capital Partners 1.5 LP.

Richard F. Schwed, Shearman & Sterling LLP, New York, New York, *for* The Tudor BVI Global Portfolio L.P., Tudor Group Holdings LLC, as successor to Tudor Proprietary Trading, L.L.C., and Tudor Investment Corporation.

Sean E. O'Donnell and Rachel Ginzburg, Herrick, Feinstein LLP, New York, New York, *for* Ex Orbit, Ltd, Satellite Senior Income Fund, LLC, CMI Holdings Investments Ltd., Castlerigg Partners, LP, Highland Crusader Offshore Partners, LP, Satellite Asset Management, LP, Sandell Asset Management Corporation, Satellite Overseas Fund Ltd., The Apogee Fund, Ltd., Satellite Fund IV, LP, Satellite Overseas Fund V, Ltd., Satellite

3

Overseas Fund VI, Ltd., Satellite Overseas Fund VIII, Ltd., Satellite Overseas Fund IX, Ltd., Satellite Fund I, LP, Satellite Fund II, LP, EX Orbit Group, Ltd., and Satellite Overseas Fund VII, Ltd.

William H. Gussman, Jr. and Frank W. Olander, Schulte Roth & Zabel LLP, New York, New York, *for* Anchorage Capital Master Offshore, Ltd., Stonehill Institutional Partners, L.P., Anchorage Capital Group, L.L.C. a/k/a Anchorage Advisors, LLC, Anchorage Capital Master Offshore II, Ltd., Stonehill Capital Management LLC, Boston Generating Offshore Holdings, Ltd., Cedarview Capital Management LP, Citigroup Alternative Investments LLC, as successor in interest to Epic Asset Management LLC, Epic Distressed Debt Opportunities Fund Ltd., Longacre Capital Partners (QP) LP, and Longacre Master Fund, Ltd.

Ramsey Hinkle and Brian D. Linder, Clayman & Rosenberg LLP, New York, New York, *for* Sandell Asset Management Corp., CMI Holdings Investments, Ltd., and Castlerigg Partners, L.P.

Matthew D. McGill, Gibson, Dunn & Crutcher LLP, Washington, District of Columbia; Dean A. Ziehl, Pachluski Stang Ziehl & Jones LLP, New York, New York, *for* Harbinger Capital Partners, LLC, Boston Harbor Power LLC, Power Management Financing LLC, and Harbinger Capital Partners Master Fund I, Ltd., f/k/a Harbert Distressed Investment Master Fund, Ltd.

Appeal from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*), affirming the order of the Bankruptcy Court (Robert E. Grossman, *Bankruptcy Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on September 13, 2021, is **AFFIRMED**.

Plaintiff-Appellant Mark Holliday, the Liquidating Trustee of the BosGen Liquidating Trust (the "Trustee"), appeals from the district court's affirmance of an order of the Bankruptcy Court for the Southern District of New York that dismissed the Trustee's fraudulent conveyance claims on the ground that the Bankruptcy Code's securities safe harbor provision, 11 U.S.C. § 546(e), pre-empted such state-law claims.

Where, as here, a district court conducts appellate review of a bankruptcy court's decision in the first instance, "we engage in plenary, or de novo, review of the district court decision" and "then apply the same standard of review employed by the district court to the decision of the bankruptcy court." *In re Anderson*, 884 F.3d 382, 387 (2d Cir. 2018). Thus, "we review the bankruptcy court's findings of fact for clear error and its legal determinations de novo." *Id.* In applying those principles here, we assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm for substantially the same reasons articulated by both the district and bankruptcy courts. *See generally In re Bos. Generating LLC*, 617 B.R. 442 (Bankr. S.D.N.Y. 2020), *aff'd sub nom. Holliday v. Credit Suisse Sec. (USA) LLC*, No. 20-cv-5404 (GBD), 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021).

This case arises out of a leveraged recapitalization transaction by EBG Holdings LLC ("EBG") and its wholly-owned subsidiary Boston Generating LLC ("BosGen"), several years prior to BosGen's bankruptcy filing, under which EBG's members received cash distributions in exchange for their equity interests in EBG (the "Leveraged Recap Transaction"). The Leveraged

Recap Transaction included a $925 million tender offer (the "Tender Offer") and a $35 million dividend distribution (the "Dividend"), which were financed in large part using two credit facilities entered into by BosGen. Specifically, BosGen's lenders disbursed proceeds from the credit facilities into a BosGen account at U.S. Bank, and within a matter of days, BosGen transferred approximately $708 million to an EBG account at Bank of America (the "BosGen Transfer"), and EBG sent the proceeds to Bank of New York ("BONY") to execute the Leveraged Recap Transaction. The Trustee now seeks to claw back the $708 million BosGen Transfer from Defendants-Appellees ("Defendants"), who received payments for their equity securities pursuant to the Leveraged Recap Transaction.

Defendants maintain that the Bankruptcy Code's safe harbor provision shields those payments from the power of avoidance vested in the Trustee. The Bankruptcy Code provides that "[n]otwithstanding [the substantive avoidance powers set forth in] this title, the trustee may not avoid a transfer that is a . . . settlement payment . . . or . . . transfer made by or to (or for the benefit of) a . . . financial institution . . . in connection with a securities contract[.]" 11 U.S.C. § 546(e). Section 546(e) is an affirmative defense; thus, Defendants "bear the burden of demonstrating that the transfers fall within the safe harbor." *In Re: Nine W. LBO Sec. Litig.*, 87 F.4th 130, 144 (2d Cir. 2023) ("*Nine West*"), *cert. denied sub nom. Stafiniak v. Kirschner as Tr. of NWHI Litig. Tr.*, 144 S. Ct. 2551 (2024).

The Trustee argues, *inter alia*, that the safe harbor provision does not apply to the BosGen Transfer because: (1) it was neither a settlement payment nor a transfer made in connection with a securities contract because it preceded execution of the Tender Offer and BosGen was not a party to the Tender Offer; and (2) neither BosGen nor EBG was a financial institution at the time of the

6

BosGen Transfer under Section 101(22)(A), because neither was a customer of BONY in connection with the Tender Offer. We disagree.

First, for substantially the same reasons stated by the district court in its thorough and well-reasoned decision, we conclude that the bankruptcy court did not err in finding that the BosGen Transfer was executed in connection with a securities contract. BosGen's credit facility agreements, which the Trustee attached to its complaint, expressly contemplated that the proceeds from the loans would be used "to fund the Distribution and Tender Offer of EBG" and that BosGen would transfer the proceeds to EBG for that express purpose. App'x at 339 (First Lien Credit and Guaranty Agreement); *see also id.* at 460 (Second Lien Credit and Guaranty Agreement). BosGen effectuated the transfer of $708 million to EBG's Bank of America account accordingly, with instructions that the funds be "use[d]" for EBG's "Distribution, Unit Buyback and Warrants Repurchases." App'x at 613; *see also id.* at 616.

"Congress signaled [in drafting and amending Section 546(e)] that the exception applies to the *overarching* transfer that the trustee seeks to avoid, not any component part of that transfer." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 379 (2018) (emphasis added). As the district court and bankruptcy court correctly determined, the credit facility agreements establish that "all the parties to the Leveraged Recap Transaction, including the lenders for the first and second credit facilities, knew that [BosGen] would transfer a portion of its loan proceeds to achieve the goal of the Leveraged Recap Transaction, funding the Tender Offer," 2021 WL 4150523, at *3, and that "BosGen and EBG clearly intended for the proceeds from the Credit Facilities to be used, in part, to fund the Distribution and the Tender Offer," 617 B.R. at 456 (internal quotation marks omitted). Thus, the bankruptcy court was correct in rejecting the Trustee's contention that

7

the elements of the safe harbor protection should be analyzed independently with respect to each "component part of" the Leveraged Recap Transaction. *See Merit Mgmt. Grp.*, 583 U.S. at 379.

Moreover, the Trustee's argument that the BosGen Transfer was not made in connection with a securities contract because BosGen was not a party to the tender offer is unavailing.[1] Even assuming *arguendo* that Section 546(e) requires that the debtor be a party to the securities contract,[2] the plain text of EBG's Offer to Purchase for the Tender Offer makes clear that BosGen was party to the contract as an EBG subsidiary. App'x at 644 (stating that "[t]he valid tender of Units by you . . . will constitute a binding agreement between you and us"); *id.* at 626 (defining "we" or "us" to mean "EBG . . . together with its subsidiaries"). As the bankruptcy court correctly determined, "[t]he Tender Offer was a contract among BosGen, EBG, and EBG's members." 617 B.R. at 486. Furthermore, the Trustee does not dispute that the Tender Offer was effectuated pursuant to that contract as written or that BosGen provided funds specifically for the purpose of making payments to EBG members tendering their units in connection with that contract.[3]

Second, the bankruptcy court did not err in finding that BosGen and EBG each constitute a "financial institution" under Section 101(22)(A). "[T]he Bankruptcy Code defines a 'financial institution' to include a 'customer' of a bank or other such entity 'when' the bank or other such entity 'is acting as agent' for the customer 'in connection with a securities contract.'" *Nine West*,

---

[1] There is no dispute that the Tender Offer constitutes a securities contract under the Bankruptcy Code.

[2] The Trustee cites no case law to support its argument that a debtor must be a party to a securities contract in order for the safe harbor provision to apply. Indeed, such a proposition is contrary to this Court's precedent. *See In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 421–22 (2d Cir. 2014) (concluding that, under Section 546(e), "a transfer is 'in connection with' a securities contract if it is 'related to' or 'associated with the securities contract'" and that Section 546(e) "sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided").

[3] Because we decide that the BosGen Transfer was made "in connection with a securities contact," we need not discuss the district court's alternative holding that it was also a "settlement payment." *See* 11 U.S.C. § 741(8).

8

87 F.4th at 145 (emphasis omitted) (quoting 11 U.S.C. § 101(22)(A)). We have previously held that a debtor is a "customer" of a bank with respect to a transaction when that bank "received and held [the debtor's] deposit of the aggregate purchase price for the shares. . . . , received tendered shares, retained them on [the debtor's] behalf, and paid the tendering shareholders." *In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 78 (2d Cir. 2019). In *Nine West*, we reaffirmed that a sufficient agency relationship under Section 101(22)(A) is established as a matter of law where "[t]he Complaint alleges and related documents show that [a bank] made payments to, and received information from, [a debtor's shareholders] during the" relevant transactions. 87 F.4th at 146.

Here, BosGen and EBG retained BONY as their agent "to act as Depository in connection with the [Tender] Offer." App'x at 663. As depository, BONY received the required documentation from members who sought to tender their units, and made payments to the tendering members with funds from the BosGen Transfer on behalf of EBG and BosGen. *See In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d at 78–80. Indeed, the Tender Offer explained that EBG and BosGen "will pay for Units purchased pursuant to the Offer by depositing the aggregate determined purchase price for the Units with the Depository, which will act as agent for tendering [m]embers for the purpose of receiving payment from [EBG and BosGen] and transmitting payments to the tendering [m]embers." App'x at 648. In addition, BosGen, together with EBG, "maintained control over the transactions" performed by BONY in connection with the Tender Offer, *Nine West*, 87 F.4th at 146, because the tendered units were deemed "accepted" for payment and purchase only if BosGen and EBG gave "notice to [BONY] of [their] acceptance." App'x at 648. Under these facts, BONY indisputably acted as an agent for BosGen and EBG in connection with their Tender Offer. *Cf. Nine West*, 87 F.4th at 147–48 (finding no agency relationship between debtor and bank with respect to transaction in which "shares were canceled automatically"

9

and "it [was] not clear [the debtor] had any authority to control [the bank's] actions in canceling the shares"). Accordingly, the bankruptcy court did not err in finding that BosGen and EBG are each a "financial institution" as a matter of law with respect to the BosGen Transfer that the Trustee seeks to avoid. These facts, which the lower courts drew from the complaint and its exhibits, establish that Defendants are entitled to the safe harbor as a matter of law.

Our rejection of the district court's "contract-by-contract" approach in *Nine West* does not change this analysis. To be sure, we determined in that case that the district court erred in holding that "once Wells Fargo acted as Nine West's agent in one transaction, it is considered Nine West's agent in all the transactions" made in connection with the relevant leveraged buyout, including those in which the bank played no role. *Nine West*, 87 F.4th at 146. Accordingly, we held that the safe harbor applied only when Nine West's bank "made payments to, and received information from, the Public Shareholders during the" relevant transactions "on behalf of" Nine West, and Nine West "maintained control over the transactions." *Id*. However, this does not impact *Merit*'s mandate that we look to the character of the "overarching transfer" to assess the applicability of Section 546(e). *See* 583 U.S. at 379. Thus, even under *Nine West*'s transfer-by-transfer approach, we look to the end-to-end transaction to determine whether the safe harbor applies.

In sum, because the BosGen Transfer constitutes a "transfer made . . . in connection with a securities contract" by a qualifying financial institution, it is entitled as a matter of law to the protection of Section 546(e)'s safe harbor, which pre-empts the Trustee's state-law fraudulent conveyance claims. *Nine West*, 87 F.4th at 150 (holding that state-law claims that conflict with Section 546(e)'s purpose are pre-empted).

\* \* \*

We have considered the Trustee's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court